## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

Spencer Sylvester and Ronald Moran,

        Plaintiffs,

    v.

Sincerely, LLC and Michael
Kirschner,

        Defendants.

Case No. _____

## CLASS ACTION COMPLAINT

### INTRODUCTION

1.    Americans receive billions of spam text messages every year.

2.    Defendants Sincerely, LLC ("Sincerely") and Michael Kirschner ("Kirschner") are responsible for a significant portion of this spam.

3.    Counsel for Plaintiffs have no less than thirty different clients who have reported spam from Defendants!

4.    Credit related calls, like those made by Defendants, are the third most common robocall complaint the Federal Communications Commission receives from consumers. *Data Spotlight: Top Robocall Complaints in 2021*, https://www.fcc.gov/data-spotlight-top-robocall-complaints-2021 (last accessed June 15, 2023).

5.      Like most Americans, Plaintiff Spencer Sylvester ("Sylvester"), Plaintiff Ronald Moran ("Moran"), and class members have a mobile residential telephone.

6.      Being mobile, they take their phones everywhere. They use their phones to receive and make important calls, to get emergency information, and to send text messages to family members and friends. They use their phones in their homes and for their personal enjoyment.

7.      But their homes, phones and privacy have been invaded by Defendants' spam text messages.

8.      Sylvester, Moran, and class members have no relationship with Defendants, have no account with Defendants, have never provided any phone number to Defendants and have never agreed for Defendants to send any type of communication.

9.      Sylvester has tried to eliminate the harassment and invasion of privacy from unauthorized text messages by registering his phone number on the National Do Not Call Registry ("DNCR").

10.     But even that has not worked. Defendants simply blast text messages without caring whether they had consent or whether the recipient was on the DNCR.

11.    "Robocalls and robotexts are nuisances. Congress banned them in the Telephone Consumer Protection Act of 1991 ('TCPA'). But as every American knows, there are companies—like Defendants in this case—who refuse to get that message while collectively sending millions of others." *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 688 (5th Cir. 2021).

12.    Plaintiffs bring this action for themselves and for other similarly situated people to enjoin these abusive practices and for damages.

## JURISDICTION AND VENUE

13.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA. 47 U.S.C § 227.

14.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a significant portion of the events giving rise to this lawsuit occurred in this district.

15.    This Court has supplemental jurisdiction over the state claims under 28 U.S.C § 1367.

## PARTIES

16.    Plaintiff Spencer Sylvester is a resident of Jacksonville, Florida.

17.    Plaintiff Ronald Moran is a resident of Burien, Washington.

18.    Defendant Sincerely, LLC is an inactive Florida corporation with its principal place of business in Boca Raton, Florida. Sincerely, LLC was administratively dissolved for failure to file annual report(s).

19.    Defendant Michael Kirschner is a resident of Florida and is/was the managing member of Sincerely, LLC.

20.    Upon information and belief, Defendant Michael Kirschner has control over all actions of Defendant Sincerely, LLC.

## FACTUAL ALLEGATIONS

21.    Moran's and Sylvester's home, phone and privacy been invaded by Sincerely's non-emergency text messages.

22.    Moran is the residential subscriber of the cell phone number 206-981-1705. Moran uses this number for personal use. Moran uses this phone number at home. Moran makes and takes 100% of his personal calls on this phone number. Moran does not use this phone number in any business.

23.    Sylvester is the residential subscriber of the cell phone number 904-351-9402. Sylvester uses this number for personal use. Sylvester uses this phone number at home. Sylvester makes and takes 100% of her personal calls on this phone number. Sylvester does not use this phone number in any business.

24.    The 904 area code is an area code assigned to telephone numbers in Florida.

25.    Sylvester registered 904-351-9402 on the DNCR to stop telephone solicitations on January 15, 2023.

26.     Defendants have knowingly and willfully initiated the sending of text messages to Moran at least twenty-five times. Here are some examples:

> **From 68753 on July 15, 2022**:
> F5kL: Update! A rapid loan up to 5,000 is available
> htre.net/2bd2a21L Text STOP to quit.
>
> **From 68753 on July 17, 2022**:
> F5kL: Hi Moran! For a rainy day loan up to 5,000 is available
> here htre.net/ywo78fW9 Reply STOP to cancel
>
> **From 68753 on July 25, 2022**:
> F5kL: Reminder Moran! A quick loan up to 5,000 is available
> Come here htre.net/4cB3Des1 to log-in Reply STOP to cancel
>
> **From 68753 on July 29, 2022**:
> F5kL: Update! A rapid loan up to 5,000 is available
> htre.net/4vAPPC4O Text STOP to quit
>
> **From 68753 on August 12, 2022**:
> F5kL: Update! A rapid loan up to 5,000 is available
> htre.net/cMAFoeHi Text STOP to quit
>
> **From 68753 on August 26, 2022**:
> F5kL: Update! A rapid loan up to 5,000 is available
> htre.net/26O8Xp9Z Text STOP to quit

27.     The messages sent to Moran contained links that when clicked brought up advertisements for loans.

28.     The texter did not disclose their individual name, nor the name of the entity whose goods and services were being promoted.

29.     Defendants have knowingly and willfully initiated the sending of text messages to Sylvester at least forty-one times. Here are some examples:

**From 844-401-0034 on December 20, 2022**
VERFY: Sylvester, Your app is ready. To continue
https://verfy.co/r/#hno86j Or Reply Stop to quit.

**From 844-401-0034 on December 21, 2022**
VERFY: Sylvester, Your app is ready. To continue
https://verfy.co/r/#hp3bhl Or Reply Stop to quit.

**From 844-401-0034 on December 22, 2022**
VERFY: Sylvester, Your app is ready. To continue
https://verfy.co/r/#hq6524 Or Reply Stop to quit.

**From 844-401-0034 on December 23, 2022**

VERFY: Sylvester, Your app is ready. To continue
https://verfy.co/r/#hs2dzq Or Reply Stop to quit.

**From 844-401-0034 on December 24, 2022**
VERFY: Sylvester, Your app is ready. To resume click here:
https://verfy.co/r/#hszovy Or Reply Stop to quit.

**From 844-401-0034 on January 3, 2023**
VERFY: Sylvester, Your Jan 3rd app requires more
information. To resume https://verfy.co/r/#i2ifjd Or Reply Stop
to quit.

**From 844-401-0034 on January 4, 2023**
VERFY: Sylvester, Your app is expired. Start a new one
https://verfy.co/r/#i3xhum Or Reply Stop to cancel.

30.     The messages sent to Sylvester contained links that when clicked

brought up advertisements for loans.

31.     The texter did not disclose their individual name, nor the name of the

entity whose goods and services were being promoted.

6

32.     On January 15, 2023, Sylvester, having grown weary of the harassment of spam, registered on the National Do Not Call Registry.

33.     Nevertheless, Sincerely and/or Michel Kirschner continued sending text messages. Some further examples are:

> **From 844-401-0034 on April 1, 2023**
> VERFY: Sylvester, Your app is expired. Start a new one
> https://verfy.co/r/#ix0mrf Or Reply Stop to cancel.

> **From 844-401-0034 on February 3, 2023**
> VERFY: Sylvester, Your app is expired. Start a new one
> https://verfy.co/r/#izfaf0 Or Reply Stop to cancel.

34.     Defendants even continued to send text messages to Sylvester more than thirty days after his number was registered on the Do Not Call Registry. Defendants sent at least twelve text messages to Sylvester after February 14, 2023. Some examples are:

> **From 844-401-0034 on February 15, 2023**
> VERFY: Sylvester, Your app is expired. Start a new one
> https://verfy.co/r/#ja10gv Or Reply Stop to cancel.

> **From 844-401-0034 on February 17, 2023**
> VERFY: Sylvester, Your app is expired. Start a new one
> https://verfy.co/r/#jchn0d Or Reply Stop to cancel.

> **From 844-401-0034 on March 3, 2023**
> VERFY: Sylvester, Your app is expired. Start a new one
> https://verfy.co/r/#jql60a Or Reply Stop to cancel.

> **From 844-401-0034 on March 22, 2023**
> VERFY: Sylvester, Your app is expired. Start a new one
> https://verfy.co/r/#k67li8 Or Reply Stop to cancel.

**From 844-401-0034 on March 27, 2023**
VERFY: Sylvester, Your app is expired. Start a new one
https://verfy.co/r/#k9kdzo Or Reply Stop to cancel.

**From 844-401-0034 on April 5, 2023**
VERFY: Sylvester, Your app is expired. Start a new one
https://verfy.co/r/#kh985m Or Reply Stop to cancel.

**From 844-401-0034 on April 7, 2023**
VERFY: Sylvester, Your app is expired. Start a new one
https://verfy.co/r/#kjcg64 Or Reply Stop to cancel.

35.    The text messages contained links to a domain(s) that are controlled
and/or owned by Sincerely.

36.    Moran never provided 206-981-1705 to Defendants, never had a
relationship with Defendants, and never gave permission for Defendants to send
any type of communication.

37.    Sylvester never provided 904-351-9402 to Defendants, never had a
relationship with Defendants, and never gave permission for Defendants to send
any type of communication.

38.    Defendants initiated the text messages for the purpose of selling loans.

39.    Defendants initiated the text messages using an automated system.
This is based on the following facts:

    i.    the text messages were generic in context suggesting they were
sent to many people;

    ii.    Defendants withheld their identity in the text messages;

iii.   the text messages provided mechanical opt-out instructions, which is not something an individual does but instead is something an autodialer does;

iv.   some of the text messages came from an SMS short code which is not possible with a regular telephone;

v.   many of the text messages came at around the same time suggesting they were sent on some automated schedule;

vi.   many people have reported getting unsolicited text messages from Defendants;

vii.   Defendants have initiated a high volume of text messages to Moran and Sylvester;

40.   Defendants stored or produced Moran's and Sylvester's telephone numbers using a random or sequential generator. This is based on the following facts:

i.   Moran and Sylvester never provided their phone numbers to Defendants, indicating that the number was randomly generated;

ii.   Neither Moran nor Sylvester have a relationship with Defendants, have any account with Defendants, have never

provided any phone number to Defendants, and have never

agreed for Defendants to send any type of communication;

iii.    Some of the text messages were not personalized and some

were;

iv.    If Defendants had acquired Moran's or Sylvester 's phone

number in a proper way, Defendants would have disclosed the

name of their company in the text messages.

41.    Counsel for Plaintiffs have no less than thirty different clients who have reported spam from Defendants!

42.    On information and belief, Defendants initiate and make tens of thousands of similar text messages to thousands of people.

43.    The unwanted spam is incredibly annoying, distracting and frustrating to Moran, Sylvester and the class members. The spam invades their substantive right to privacy, namely the right to be free from unsolicited text messages. When the spammers hide their identity, it hinders Moran, Sylvester and class members from enforcing their rights to determine the purpose of the call, to make a do-not-call request and to monitor compliance with the TCPA. It makes people worry that their phones have been compromised. The spam causes Moran, Sylvester and class members to avoid looking at their phones when it may be important or interrupting other activities to respond to unwanted text messages. The spam reduces their

phones' storage and battery life. In short, the spam invades their privacy, diminishes the value of their phones and their enjoyment of life and causes a nuisance, an annoyance and an intrusion into their seclusion.

44.    Sincerely has been sued other times for violations of the TCPA and is therefore aware of the regulations necessary to maintain compliance with the TCPA.

45.    Michael Kirschner has also been sued for TCPA violations in conjunction with Sincerely.

46.    On information and belief, Michael Kirschner personally initiated the text messages and actively authorized, oversaw and directed the telephone spam. This is based on the following facts:

     a.    Michael Kirschner is the managing member of Sincerely, LLC.

     b.    Sincerely, LLC was administratively dissolved September 24, 2021, for failing to file its annual reports with the State of Florida.

     c.    After the administrative action, text messages continue to be sent with links to domains registered in the name of Sincerely, LLC.

47.     By initiating text messages to Moran, Sylvester and the class members, Defendants have harmed Moran, Sylvester and the class members in the exact way that Congress sought to protect in enacting the TCPA.

## LEGAL STANDARD

48.     **Autodialed Text messages**. The TCPA prohibits text messages to cell phones using an automatic telephone dialing system ("ATDS") except for "emergency purposes" or with the "prior express consent" of the called party. 47 C.F.R. §64.1200(a)(1). Text messages that introduce an advertisement or constitute telemarketing require "prior express written consent." 47 C.F.R. § 64.1200(a)(2).

49.     **National Do Not Call Registry**. Residential telephone subscribers who do not want to receive telephone solicitations may place their phone number on the national DNCR. 47 C.F.R. § 64.1200(c)(2). The TCPA proscribes callers from making "any telephone solicitation to… [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2). Wireless telephone subscribers are allowed to place their number on the DNCR. 47 C.F.R. § 64.1200(e).

50.     **Text Messages Are Calls**. Both phone calls and text messages qualify as a "call." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156, 136 S. Ct. 663, 667, 193 L. Ed. 2d 571 (2016), as revised (Feb. 9, 2016); *Satterfield v. Simon Schuster*,

569 F.3d 946, 952-54 (9th Cir. 2009) (citing *In re Rules and Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, Report and Order,

18 FCC Red. 14014, 14115 ¶ 165, 2003 WL 21517853).

51.    **Identification of Caller**. The TCPA requires telemarketers to disclose

the name of the individual caller and the name of the person or entity on whose

behalf the call is being made. 47 C.F.R. § 64.1200(d)(4). "The FCC clarified that

providing a d/b/a in a telemarketing message is permissible, but it is insufficient to

fully comply with Section 64.1200(d)(4)." *Robison v. 7PN, LLC*, 569 F. Supp. 3d

1175, 1185 (D. Utah 2021) (citing *Rules and Regulations Implementing the TCPA*,

68 Fed. Reg. 44144, 44163 (July 25, 2003)).

52.    **Personal Liability**. Individuals may be personally liable for TCPA

violations when the individual "actually committed the conduct that violated the

TCPA, and/or actively oversaw and directed this conduct." *City Select Auto Sales

Inc. v. David Randall Assocs*., 855 F.3d 154, 162 (3d Cir. 2018); *see also* 47 U.S.C.

§ 217.

53.    **Washington Commercial Text Messages**. No person "may initiate

or assist in the transmission of an electronic commercial text message to a

telephone number assigned to a Washington resident" unless the recipient has

"clearly and affirmatively consented in advance." RCW 19.190.060(1), .070(1)(b).

13

A "commercial electronic text message" is a text message that promotes "real property, goods, or services for sale or lease." RCW 19.190.010.

## CLASS ACTION ALLEGATIONS

54.     Pursuant to Civ. R. 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, Moran and Sylvester bring this action on behalf of themselves and the following Classes of persons similarly situated in order to remedy the ongoing unlawful practices alleged herein and to seek redress on behalf of all those persons who have been harmed thereby, including injunctive relief.

**Class Definitions**. Moran and Sylvester propose the following Classes:

**The National DNCR Class**
All people in the United States (1) to whom Sincerely initiated more than one telephone solicitation within any 12-month period, (2) to their residential cellular telephone number, (3) while their phone number was listed on the national Do Not Call Registry, (4) in the four years from the filing of this action through the date of class certification.

**The ATDS Class**
All people in the United States (1) to whom Sincerely initiated one or more text message to their cellular telephone, (2) using the same equipment or type of equipment utilized to initiate text messages to Moran and/or Sylvester, (3) in the four years from the filing of this action through the date of class certification.

**The Failure to Identify Class**
All persons in the United States (1) to whom Sincerely initiated more than one telemarketing call or text message within any 12-month period, (2) to their residential cellular telephone number, (3) without disclosing the name of the individual initiating the text message and the name of the entity on whose behalf the text message were sent,

(4) four years from the filing of this action through the date of class certification.

**The Washington Commercial Text Messages Class**
All persons (1) who are residents of Washington (2) to whom Sincerely initiated or assisted in the transmission of (3) one or more commercial text messages (4) four years from the filing of this action through the date of class certification.

55.    A member of a class may sue as a representative party if the member satisfies Federal Rule of Civil Procedure 23(a)'s four prerequisites: numerosity, commonality, typicality and adequacy of representation. Fed. R. Civ. P. 23(a).

56.    If Rule 23(a) is satisfied, a putative class representative must also show that the class falls into one of three categories under Rule 23(b). Fed. R. Civ. P. 23(b). For a Rule 23(b)(3) class, a plaintiff must make two further showings. First, a plaintiff must show that questions of law or fact common to class members predominate over any questions affecting only individual class members. *Id.* Second, a plaintiff must demonstrate class action is superior to other available methods for adjudicating the controversy.

57.    **Numerosity**. A proposed class satisfies the numerosity requirement if class members are so numerous that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1). The numerosity requirement is not tied to any fixed numerical threshold. In general, courts find the numerosity requirement satisfied when a class includes at least forty members. Here, the Classes are so numerous that joinder of all members would be impracticable. The exact size of

the Classes and the identity of the members are readily ascertainable from business records and likely number in at least the thousands.

58. **Commonality**. A proposed class satisfies Rule 23's commonality requirement if there is at least one question of fact or law common to the class. Fed. R. Civ. P. 23(a)(2). It is not a high standard. The claims must depend upon a common contention such that the determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. The word 'question' in Rule 23(a)(2) is a misnomer: What matters to class certification is not the raising of common questions but rather, the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.

There are questions of law and fact common to the proposed Classes, including:

Did they receive text messages from Sincerely?

Were their numbers registered on the DNCR?

Did Sincerely timely honor opt-out requests?

Did Sincerely use an ATDS?

Did the text messages properly disclose the identity of Sincerely?

Were the text messages for an emergency purpose?

59. **Typicality**. A proposed class representative's claims and defenses must also be typical of the class. Fed. R. Civ. P. 23(a)(3). The Supreme Court has

16

recognized that the commonality and typicality requirements of Rule 23(a) tend to merge. Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought. Representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical.

60.    Moran's and Sylvester 's claims herein are typical of those of the Classes that Moran and Sylvester seek to represent. Moran's, Sylvester's and the Class members' claims arise from the same conduct of Sincerely.

61.    **Adequacy of Representation**. The final prerequisite under Rule 23(a) requires that the Court must be satisfied that the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This overlaps in practice with the requirement under Rule 23(g) that class counsel must adequately represent the interests of the class. Fed. R. Civ. P. 23(g). The inquiry under Rule 23(a)(4) asks two questions: (1) Does the representative plaintiff and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiff and their counsel prosecute the action vigorously on behalf of the class? Moran and Sylvester are an adequate representative of the Classes because his interests are common with the interests of the Classes, and Moran and Sylvester will fairly and adequately protect the interests of the Classes

by pursuing this matter. Moran and Sylvester are represented by counsel competent and experienced in TCPA and class action litigation.

62.  **Predominance of Common Questions**. A plaintiff may bring a class action under Rule 23(b)(3) only where questions of law or fact common to the class predominate over questions affecting only individual members. Fed. R. Civ. P. 23(b)(3). If liability can be determined at a class-wide basis, common issues predominate. This is true even if, at the damages stage, there remain non-injured class members and individualized damages calculations are required.

63.  **Superiority**. The final determination a court must make to certify a Rule 23(b)(3) class is that class action would be superior to individual actions in fairly and efficiently resolving the claims presented in this matter. Rule 23 enumerates four factors pertinent to determining whether class action is the superior method of litigation. First, the class members' interests in individually controlling the prosecution or defense of separate actions. Fed. R. Civ. P. 23(b)(3)(A). Second, the extent and nature of any litigation concerning the controversy already begun by or against class members. Fed. R. Civ. P. 23(b)(3)(B). Third, the desirability or undesirability of concentrating the litigation of the claims in the particular forum. Fed. R. Civ. P. 23(b)(3)(C). Finally, the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(D). Where class

wide litigation will reduce litigation costs and promote greater efficiency, a class action may be the superior method of litigation.

64.     In the present suit, the questions of law and fact common to the class members predominate over questions affecting only individual members. A class action is superior to multiple individual suits because it conserves judicial resources, promotes consistency and efficiency of adjudication and deters illegal activities. The interest of individual members of the Classes in individually controlling the prosecution of separate claims against Sincerely are small because the damages in an individual action for violations of the TCPA are small. Moran and Sylvester are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

65.     Managing this case as a class action should have no significant difficulties. The law applicable to each putative class member is identical. The facts are too. Ultimately, the basic questions in this case are the same for all class members. The common answer to these questions will determine Sincerely's liability. Precedent demonstrates these questions can be litigated on a class wide basis.

## FIRST CAUSE OF ACTION
### Illegal Solicitation of Persons on the DNCR
### (On Behalf of Sylvester and the DNCR Class)

66.    Sincerely violated 47 C.F.R. § 64.1200(c)(2) by initiating telephone solicitations to the residential cellular telephones of Sylvester and members of the National DNCR Class while their phone numbers were on the National DNCR.

67.    Kirschner is personally liable for these violations because he actively oversaw, authorized, and/or was involved in the sending of these text messages.

68.    Sylvester and members of the National DNCR Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(c)(5).

69.    The Court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id.*

70.    The Court should enjoin Defendants from initiating telephone solicitations to phone numbers on the DNCR. *Id*.

## SECOND CAUSE OF ACTION
### Illegal Use of an ATDS
### (On Behalf of the ATDS Class)

71.    Sincerely violated 47 C.F.R. § 64.1200(a)(1)-(2) by using an ATDS to contact Moran, Sylvester, and members of the ATDS Class.

72.    Kirschner is personally liable for these violations because he actively oversaw, authorized, and/or was involved in the sending of these text messages.

20

73.    Moran, Sylvester and members of the ATDS Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(b)(3).

74.    The Court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id.*

75.    The Court should enjoin Defendants from using an ATDS to initiate text messages absent proper consent or an emergency. *Id*.

### THIRD CAUSE OF ACTION
### Failure to Identify
### (On Behalf of the Failure to Identify Class)

76.    Sincerely violated 47 C.F.R. § 64.1200(d)(4) by failing to disclose the name of the individual caller and the full name of Sincerely in the text messages to Moran, Sylvester and members of the Failure to Identify Class.

77.    Kirschner is personally liable for these violations because he actively oversaw, authorized, and/or was involved in the sending of these text messages.

78.    Moran, Sylvester and members of the Failure to Identify Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(c)(5).

79.    The Court should award $1,500 in statutory damages for each violation because the violations were knowing and willful. *Id*.

80.    The Court should enjoin Defendants from failing to disclose the name of the individual caller and the name of Sincerely, LLC on all telemarketing calls and text messages. *Id*.

**FOURTH CAUSE OF ACTION**
**Violations of RCW 19.190.060 and RCW 19.86**
**(On Behalf of Moran and the Washington**
**Commercial Text Message Class)**

81.    Sincerely violated RCW 19.190.060 by initiating or assisting in the transmission of electronic text messages to Moran and members of the Washington Commercial Text Messages Class without consent.

82.    Kirschner is personally liable for these violations because he actively oversaw, authorized, and/or was involved in the sending of these text messages.

83.    Moran and members of the Washington Commercial Text Messages Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. RCW 19.190.040(1); see also *Wright v. Lyft, Inc.*, 189 Wash. 2d 718 (2017) (finding a violation of RCW 19.190.040 is a violation of Washington's Consumer Protection Act and establishes both the injury and causation elements thereof).

84.    The Court should enjoin Defendants from sending commercial text messages to Washington residents without clear and affirmative consent. RCW 19.86.090.

22

## RELIEF REQUESTED

Moran and Sylvester respectfully request the Court grant the following relief against Sincerely and Michael Kirschner:

A.     Certification of the proposed Classes;

B.     Appointment of Moran and Sylvester as class representatives;

C.     Appointment of the undersigned as counsel for the Classes;

D.     An order enjoining Sincerely as set forth above;

E.     An award of damages to Plaintiffs and the Classes, as allowed by law;

F.     A Jury Trial; and

G.     Order granting such other relief as the Court deems necessary, just, and proper.

Dated: July 5, 2023                    Respectfully submitted,

                                       /s/ *John Kauffman*
                                       John Kauffman
                                       Florida Bar No. 538205
                                       LawHQ, P.C.
                                       299 S. Main St. #1300
                                       Salt Lake City, UT 84111
                                       385-285-1090
                                       john.kauffman@lawhq.com

                                       *Attorney for Plaintiffs*